IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

**NORTH AMERICAN PRECAST, INC.
and G & G BUILDERS, INC.,**

    Plaintiffs,

v.

                                                    Civil Action No. 3:04-1307
                                        Honorable John T. Copenhaver, Jr.

**GENERAL CASUALTY COMPANY OF
WISCONSIN, a Wisconsin corporation,**

    Defendant.


**PLAINTIFFS' MOTION FOR RECONSIDERATION OF
THE COURT'S RULING ON PLAINTIFFS' PUNITIVE DAMAGES CLAIMS**

COME NOW the Plaintiffs, North American Precast, Inc. and G & G Builders, Inc., by counsel, and for their *Motion For Reconsideration Of The Court's Ruling On Plaintiffs' Punitive Damages Claims* state as follows:

### Introduction

On September 15, 2009, the Court granted, in part, Defendant General Casualty Company of Wisconsin's *Motion For Judgment As A Matter Of Law, For New Trial And/Or For Remittitur* and gave the Plaintiffs the choice of either accepting the Court's remittitur of a previous jury award or proceeding with a new trial. On September 24, 2009, the Plaintiffs elected to reject the remittitur and a new trial has now been scheduled to begin on January 20, 2010.

In the previous trial, the Plaintiffs prevailed on their claims against Defendant

General Casualty for breach of contract, bad faith and violations of West Virginia's Unfair Trade Practices Act. However, the Plaintiffs were not permitted to present their claims for punitive damages to the jury. (See Trial Transcript at pg. 775.) Instead, the Court ruled that the Plaintiffs had not presented sufficient evidence to meet the threshold of "actual malice" required for an award of punitive damages under West Virginia law. Because the evidence presented at the previous trial raises a genuine question of fact with regard to whether General Casualty knew the Plaintiffs' claims were covered under the General Casualty policy, but continued to deny them anyway, the Plaintiffs' now ask that the Court reconsider its earlier ruling and submit the issue of punitive damages to the jury.

## Statement of Facts

In this action, the Plaintiffs sought a declaratory judgment with regard to whether a commercial general liability insurance policy issued by Defendant, General Casualty Company of Wisconsin to North American Precast, Inc. provided coverage for damages arising out of the collapse of a precast hollow core concrete "plank" during the construction of the Western Regional Jail in Barboursville, West Virginia. The Court found that coverage would apply to resulting damages to the masonry walls and concrete floors of the jail facility. Phase One of the trial was then held to decide whether or not the walls and floor were actually damaged and, if so, the extent of the resulting damages. The jury in Phase One was also asked to determine whether General Casualty received reasonable notice of the claim.

At the conclusion of Phase One of the trial, the jury concluded that General Casualty did receive reasonable notice of the claim at issue, and awarded the Plaintiffs

$94,474.71 in damages for the cost of repairing the resulting damages to the masonry walls and concrete floor of the jail facility.  The same jury then proceeded to hear Phase Two of the trial, addressing the Plaintiffs' claims for breach of contract, bad faith, and violations of West Virginia's Unfair Trade Practices Act.  After hearing the evidence, the jury found that General Casualty breached its insurance contract, violated the Unfair Trade Practices Act as a business practice and was guilty of bad faith.  The jury awarded the Plaintiffs $1,712,644.29 in consequential damages, and $1,812,500 for the aggravation, annoyance and inconvenience caused by the Defendant's conduct.  While the Plaintiffs also asserted that General Casualty was liable for punitive damages because it refused to defend North American even though it knew that at least a portion of the claims were covered, and because General Casualty acted with actual malice in the handling of the claims of G & G, the jury was not permitted to consider any award of punitive damages.

In support of their claims for punitive damages, the Plaintiffs presented evidence that General Casualty's agent had sent a January 23, 2003 e-mail to General Casualty's adjuster Debbie Keisler, which stated:

> Good morning!  **There is additional property damage caused by the collapse, however I don't have specific information regarding that.**  They are also claiming adverse impacts including 'project delays, repair/replacement of defective product, precautionary reinforcement measures, additional testing and inspection . . .

(see Plaintiffs' Trial Exhibit 7.)  (Emphasis supplied.) On the same day, Ms. Keisler acknowledged that General Casualty's policy would cover the claims for resulting property damage, when she indicated in a Claims Set-up Requisition form, "Our policy would respond to resultant damage if a case of liability is established against the insd." (See

Plaintiffs' Trial Exhibit No. 8)  Ms. Keisler also acknowledged at trial that she was aware of the fact that resultant damage would be covered.  She testified:

> Q. The distinction that I was trying to make for the person receiving this assignment was that our policy would not respond to the damage to our insured's plank.  It would not cover that.  **If that plank caused other damage, it would respond to that.**

(Trial Transcript at 542) (Emphasis supplied.)  Ms Keisler also acknowledged that it was General Casualty's obligation to investigate the statement by its own agent to determine if any of the damages claimed by G & G against North American were covered.  She was asked:

> Q. So when General Casualty's agent, Sutherin, sent a communication that said, "There is additional property damage caused by the collapse," it was General Casualty's obligation to investigate to determine what that was, correct?
>
> A. I would think. Yes.

(Trial Transcript at 270.)  Ms. Keisler even acknowledged that General Casualty had received photographs which depicted the scene of the collapse where the resultant damage had occurred.  She was asked:

> Q. And whether or not it's those specific photos, your recollection is not - - you don't have your set in front of you to say whether these are precisely the same photographs, but they may be.
>
> A. That's correct.
>
> Q. But what you certainly know is that you received photographs showing the Western Regional Jail work area?
>
> A. That's correct.
>
> Q. The plank that was at issue here that collapsed and the debris from that on the floor and against the walls, correct?

A. Yes.

(Trial Transcript at 372) Despite having photos of the resultant damage and a statement from its agent specifically advising it that such damage existed, General Casualty continued to deny any liability or a duty to defend North American Precast.

Shortly after receiving G & G's invoice for the clean up, North American Precast brought suit against G & G in the Court of Common Pleas of Summit County, Ohio, seeking to recover payment for the materials it had supplied. G & G responded by filing a counterclaim, setting forth G & G's claims against North American Precast in connection with the collapse of the concrete plank at the Western Regional Jail facility (See Plaintiffs' Trial Exhibit No. 24, the Counterclaim) (Trial Transcript at pg. 312). Although it received notice of the litigation and knew that its policy would "respond to resultant damage," General Casualty refused to provide North American Precast with a defense and, on July 8, 2003, sent a coverage denial letter to North American Precast's counsel, Michael Fortney. This letter stated, in relevant part:

> This is a breach of contract claim. General Casualty does not provide coverage under these circumstances. The only allegation apparent is that the plank was defective in product manufacture. **In the absence of resulting property damage or bodily injury, General Casualty does not have an obligation to defend or otherwise indemnify its insured for the claims made by G & G Builders against North American**.

(See Plaintiffs' Trial Exhibit No. 23.) (Emphasis supplied.) Remarkably, General Casualty took this position even though its representative, Ms. Keisler, admitted that General Casualty had never taken a statement from anyone at G & G regarding the claim (Trial Transcript at Pg. 242), and never gave G & G an opportunity to provide additional

information regarding the nature of its claims  (Trial Transcript at pg. 373).

As the underlying litigation progressed, Attorney Fortney obtained discovery responses from G & G Builders which specifically indicated that it was pursuing a claim for "resulting property damage." Fortney forwarded these materials to General Casualty with a request that it reconsider its coverage decision and defend the claims against North American.  (See Plaintiffs' Trial Exhibit No. 28, Fortney's letter to Attorney Rosenberg dated July 26, 2004.) In that letter, Attorney Fortney identified the specific policy language at issue and then advised General Casualty that a covered claim was being made.  He testified at trial as follows:

> Q. That the definition under the General Casualty policy for property damage is "physical injury to tangible property;" is that correct, Mr. Fortney?
>
> A. That's right.  That's what the policy says.
>
> Q. And if I could flip back with you to page 5, you've indicated that you set forth in your letter to General Casualty through Mr. Rosenberg, that G & G Builders claims physical injury to the property; is that correct?
>
> A. That's correct.

(Trial Transcript at 331)  Despite Mr. Fortney's efforts to lay out the coverage issue in great detail, General Casualty refused to reconsider its position and, on November 15, 2008, General Casualty sent another denial letter stating, "The information provided does not establish coverage pursuant to the policies of insurance issued by General Casualty Company to North American Precast." (See Plaintiffs' Trial Exhibit No. 34.)  In light of the fact that the General Casualty policy clearly covered claims for resultant property damage, there existed no factual or legal basis at all to support this position.

On March 31, 2008, the Court removed any remaining doubt about coverage by ruling that coverage did exist for the resulting damage to the masonry walls and concrete floors of the jail facility. Even after that ruling, however, General Casualty still refused to consider any of the Plaintiffs' claims and forced the Plaintiffs to proceed to trial. Because this evidence clearly creates, at the very least, a genuine question of fact with regard to whether General Casualty knew that some of the G & G claims against North American were covered, but refused to defend them anyway, the Plaintiffs ask that the Court reconsider its ruling and allow the jury to consider the issue of punitive damages.

## Argument

The Court's prior ruling on the Plaintiffs' punitive damages claims effectively granted General Casualty a directed verdict as to the Plaintiffs' claims for punitive damages against General Casualty. In the case of **White v. American General Life Insurance Company, 2009 WL 2742647 (S.D. W. Va.)**, the Court noted:

> summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. . . Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.

**White** at 9 citing **Anderson v. Liberty Lobby, Inc. 477 U.S. 242, at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986**) and **Overstreet v. Ky. Cent. Life Ins. Co., 950 F. 2d 931, 937 (4th Cir. 1991)**. In **Anderson,** the United State Supreme Court stated:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The

> evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

***Anderson*** at 255, 2513. In this case, there is substantial evidence from which a jury could determine that General Casualty knew there was coverage for at least some of the claims asserted by G & G against North American, but refused to defend North American anyway. Pursuant to the principles set forth in *Anderson*, the existence of such evidence precludes summary judgment or a directed verdict for General Casualty on the issue of punitive damages.

In reaching its prior ruling on the Plaintiffs' punitive damages claims, the Court concluded that the Plaintiffs had not presented evidence sufficient to meet the threshold of "actual malice." required for an award of punitive damages. That requirement originated in the West Virginia State Supreme Court's holdings in **Hayseeds v. State Farm Fire and Casualty Company, 352 S.E.2d 73 (W. Va. 1986)**, and **McCormick v. Allstate Ins. Co, 505 S.E.2d 454 (W. Va. 1998)**, where the Court indicated that a claimant must present evidence of actual malice in order to support a claim for punitive damages in this type of case. The Court in **Hayseeds** stated, "By 'actual malice' we mean that the [insurance] company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." (footnote omitted). **Hayseeds at 330-31, 352 S.E.2d at 80-81**. In **McCormick**, the Court noted:

> We see no reason why this Court should abandon the "actual malice" standard, with its focus on the insurer's treatment of the policyholder, where, as int eh case *sub judice*, a first-party claim is asserted under the Unfair Claim Settlement Practices Act.

*McCormick*, at 459. The Court went on to state:

> By "actual malice" we mean that the insurance company actually knew that the policyholder's claim was proper but willfully, maliciously and intentionally utilized an unfair business practice in settling or failing to settle, the insured's claim.

*Id*. Thus, a showing of actual malice is necessary to recover punitive damages for General Casualty's violations of West Virginia's Unfair Trade Practices Act or its "bad faith" conduct during the handling of the Plaintiffs' claims.

The evidence in this case clearly establishes that General Casualty knew that resulting property damage was covered under its policy with North American and General Casualty was placed on notice by its agent as early as the January 23, 2003 e-mail that such damages existed in this case. That communication is significant because the agent did not indicate that resultant damages "may" exist. Instead the agent specifically stated, "**There is additional property damage caused by the collapse,** . . ." (See Plaintiffs' Trial Exhibit 7.) (Emphasis supplied.) Such an unambiguous statement leaves little room for General Casualty to argue that it was unaware of the fact that at least a portion of G & G's claims against North American were covered when it refused to defend North American. Moreover, the discovery materials and letter Attorney Fortney sent to General Casualty's counsel expressly indicated that G & G was pursuing a claim for resultant property damages and even directed General Casualty to the relevant language of its own policy. (See Plaintiffs' Trial Exhibit No. 28, Fortney's letter to attorney Rosenberg dated July 26, 2004.) Taken together, the January 23, 2003 e-mail and the July 26, 2004 letter clearly raise, at the very least, a genuine question of fact with regard to whether or not General Casualty knew that some of the claims of G & G against North American Precast were

covered but refused to defend the claims anyway.

While General Casualty may assert that its' refusal to defend North American Precast does not amount to "actual malice" because much of G & G's claims were not covered, that argument ignores applicable West Virginia law. In that regard, the West Virginia State Supreme Court of Appeals noted in **Horace Mann Ins. Co. v. Leeber**, **180 W. Va. 375, 376 S.E.2d 581 (W. Va. 1988)**:

> First, if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims. Second, an insured's right to a defense will not be foreclosed unless such a result is inescapably necessary.

**Leeber** at 378, 584. Since General Casualty clearly knew that a claim for resulting damages was covered under North American Precast's policy and also had been advised on more than one occasion that G & G was asserting a claim for such damages against North American, a jury could reasonably conclude that General Casualty knew it had a duty to defend North American Precast and willfully and maliciously refused to do so. At the very least, the January 23, 2003 e-mail and the July 26, 2004 letter raise a legitimate factual question about what General Casualty "knew" at the time it refused to defend Defendant North American Precast. Pursuant to **Anderson**, supra, such factual disputes as to General Casualty's subjective knowledge are more properly resolved by a jury.

In her concurring opinion in **McCormick**, supra, Justice Margaret Workman discussed the application of the "actual malice" standard to claims arising under the Unfair Trade Practices Act, stating:

> Implicit in that standard is the recognition that in the statutory setting, it is the unfair settlement *practice* toward which the statute is directed, rather than just the action toward that particular individual. Thus, contrary to the approach of the lower court, recovery of punitives does not necessitate actual malice toward the individual insured, but instead contemplates only that the insurer denied the claim knowing it to be proper *and* that the unfair trade practice itself can in aggravated circumstances indicate such a blatant disregard of civil obligations to insureds in general that the insurer may be liable for punitives.

**McCormick** at 543, 462. (Emphasis in original.) In this case, the jury in the first trial expressly found that General Casualty violated West Virginia's Unfair Trade Practices Act with sufficient frequency as to indicate a general business practice. In light of the substantial evidence that General Casualty knew that at least part of G & G's claims against North American were covered and, therefore, subject to General Casualty's duty to defend, its refusal to defend the underlying action also raises a genuine question of fact regarding whether General Casualty's violations of statute indicate a blatant disregard of its obligations to its insureds and/or claimants. The factual question of whether General Casualty's conduct establishes a blatant disregard of its obligations to its insureds and/or claimants. This is particularly true where the evidence clearly established General Casualty's utter failure to investigate G & G's claims against North American before issuing its denial of coverage and its refusal to defend North American should be decided by a jury.

## Conclusion

For all of the foregoing reasons, the Plaintiffs respectfully request that the Court reconsider its August 20, 2008 ruling on the Plaintiffs' punitive damages claims and permit

the issue to be decided by the jury at the trial of this action.

        Respectfully submitted,

        **NORTH AMERICAN PRECAST, INC., and G & G BUILDERS, INC.**

        **By Counsel:**

        /s/ *Charles M. Johnstone, II*
Charles M. Johnstone, II (WVSB #5082)
Johnson W. Gabhart (WVSB #5492)
**JOHNSTONE, GABHART & PRIM, LLP**
P.O. Box 313
Charleston, WV 25321
Telephone: (304) 343-7100
Fax: (304) 343-7107
E-mail: sjohnstone@wvlaw.net
       jgabhart@wvlaw.net

        /s/ *Brent K. Kesner*
Brent K. Kesner (WVSB #2022)
Ernest G. Hentschel, II (WVSB #6006)
**KESNER, KESNER & BRAMBLE, PLLC**
112 Capitol Street
P.O. Box 2587
Charleston, WV 25329
Telephone: (304) 345-5200
Fax: (304) 345-5265
E-mail: bkesner@kkblaw.net
       ehentschel@kkblaw.net

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

**NORTH AMERICAN PRECAST, INC.**
**and G & G BUILDERS, INC.,**

    Plaintiffs,

v.                                             **Civil Action No. 3:04-1307**
                                                                 Honorable John T. Copenhaver, Jr.

**GENERAL CASUALTY COMPANY OF**
**WISCONSIN, a Wisconsin corporation,**

    Defendant.

## CERTIFICATE OF SERVICE

I, Brent K. Kesner, as additional counsel for the Plaintiffs, hereby certify that on the 11th day of **December, 2009,** I electronically filed the foregoing **PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON PLAINTIFFS' PUNITIVE DAMAGES CLAIMS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Derek W. Marsteller, Esq. | Thomas L. Rosenberg, Esq. |
| **Marsteller Law Offices** | **Roetzel & Andress, LPA** |
| 622 Seventh Street | 155 East Broad Street, Twelfth Floor |
| Huntington, WV 25716 | Columbus, OH 43215 |

/s/ *Brent K. Kesner*
Brent K. Kesner (WVSB #2022)
**Kesner, Kesner & Bramble, PLLC**
112 Capitol Street
P.O. Box 2587
Charleston, WV 25329
Phone: (304) 345-5200
Fax: (304) 345-5265